# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

STEPHEN E. FLECHNER,

    Plaintiff,

v.

STANDARD METALS PROCESSING, INC. f/k/a STANDARD GOLD, INC., a Nevada corporation,

    Defendant.

## COMPLAINT

Plaintiff Stephen E. Flechner ("Mr. Flechner") for his Complaint against Defendant Standard Metals Processing, Inc., f/k/a Standard Gold, Inc. ("SMP" or "Company"), alleges as follows:

### I. INTRODUCTION

1. Mr. Flechner brings this action against SMP as a result of SMP's unlawful and improper refusal to recognize Mr. Flechner's stock options and its refusal to grant Mr. Flechner shares when he properly sought to exercise his options to purchase SMP shares.

### II. THE PARTIES

2. Mr. Flechner is an individual residing at 1337 S. Fillmore Street, Denver, CO 80210.

1675948.3

3. Upon information and belief, SMP is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 611 Walnut Street, Gadsden, AL 35901.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and more than $75,000 is at issue.

5. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6. Venue and personal jurisdiction over Defendant is proper in this District pursuant to 28 U.S.C. §1391.

7. SMP conducts and conducted business in Colorado.

### IV. BACKGROUND

8. This action arises out of SMP's refusal to allow Mr. Flechner to exercise his options granted to him pursuant to a Stock Option Agreement dated April 1, 2010 and a second Stock Option Agreement dated January 21, 2011 (collectively the "Stock Option Agreements"). Mr. Flechner seeks to exercise his options and be issued the shares of SMP common stock he is entitled to upon exercise or, alternatively receive damages in the amount due to him on the basis of his cashless exercises, and to be properly compensated for all applicable fees and costs associated with enforcing his rights.

9. Pursuant to SMP's Articles of Incorporation, as amended, SMP has the authority to issue 500,000,000 shares of common stock and 50,000,000 shares of preferred stock. The Articles allow the Board of Directors to issue stock at its "discretion." According to SMP's

Annual Report on Form 10-K for the year ended December 31, 2013, filed with the U.S. Securities and Exchange Commission (the "SEC") on April 11, 2014, SMP had 95,572,216 shares of common stock outstanding as of March 31, 2014.

10. On March 22, 2010, SMP's Board of Directors approved SMP's 2010 Stock Incentive Plan (the "Plan") covering three million shares of common stock, and reserved three million shares of common stock for issuance under the Plan. The Plan was filed as an exhibit to SMP's Current Report on Form 8-K filed with the SEC on April 5, 2010.

11. On April 1, 2010, Mr. Flechner and SMP entered into an Employment Agreement whereby Mr. Flechner agreed to serve as the Company's President. As part of his compensation, the Employment Agreement provided that SMP would grant Mr. Flechner the option to purchase 800,000 shares of the Company's common stock.

12. SMP and Mr. Flechner entered into a Stock Option Agreement documenting his right to purchase the 800,000 shares of stock at $0.90 per share ("2010 Stock Option Agreement").

13. Pursuant to the 2010 Stock Option Agreement, SMP represented that the shares subject to the Plan had been reserved for issuance and promised that it "shall at all times during the term of the Option reserve and keep available such number of shares as will be sufficient to satisfy the requirements of this Agreement."

14. On January 21, 2011, SMP's Board of Directors increased the number of shares available under the Plan to 13,500,000. The Board of Directors further resolved to issue additional stock options to numerous executives at the Company, including 750,000 to Mr. Flechner, then President. The Board of Directors directed the Company's officers to execute and

deliver any documents and instruments necessary to carry out the purposes of this amendment. The Board of Directors also authorized the filing of a Registration Statement on Form S-8 covering the full 13,500,000 shares subject to the Plan. The amendment to the Plan was filed as an exhibit to SMP's Current Report on Form 8-K filed with the SEC on January 27, 2011, as well as an exhibit to SMP's Registration Statement on Form S-8.

15. On that same day, and in connection with the grants of stock options, Mr. Flechner and SMP entered into a second Stock Option Agreement, reflecting the additional 750,000 options issued to Mr. Flechner at an exercise price of $0.51 per share ("2011 Stock Option Agreement" and, together with the 2010 Stock Option Agreement, the "Stock Option Agreements").

16. The 2011 Stock Option Agreement had substantially the same terms as the 2010 Stock Option Agreement. It similarly stated that "shares of common stock of the Company have been reserved for issuance under the Plan" and represented that SMP "shall at all times during the term of the Option reserve and keep available such number of shares as will be sufficient to satisfy the requirements of this Agreement."

17. The options were to vest periodically, at which time Mr. Flechner had the right to exercise those options and purchase SMP stock. In accordance with the terms of the Stock Option Agreements, vesting of the options was accelerated upon SMP's change of control on March 15, 2011, so that the options became exercisable in full.

18. The Plan states that a "stock option may be exercised, in whole or in part, by giving written notice to the Company, specifying the numbers of shares of Common Stock to be purchased and accompanied by the full purchase price of such shares." (Plan § 6.3, at 3.) The

1675948.3

Plan allows the option price to be payable (a) "by cash," (b) "by delivery of shares of Common Stock in payment of all or any part of the option price", or (c) "by instructing the Company to withhold from the shares of Common Stock issuable upon exercise of the stock option shares of Common Stock in payment of all or any part of the exercise price and/or any related withholding tax obligations . . . ." (*Id.*)

19. Pursuant to the resolutions adopted by the Board, SMP filed the Registration Statement on Form S-8 with the SEC on January 27, 2011, registering 13,500,000 shares issuable pursuant to the Plan. The Form S-8 included a legal opinion covering the full 13,500,000 shares. SMP also filed numerous other public documents, including Quarterly Reports on Form 10-Q, Annual Reports on Form 10-K and Current Reports on Form 8-K, which reflected the increase of shares available for issuance under the Plan to 13,500,000. These public filings were signed by SMP's executives and directors and, in the case of Form 10-Ks, were audited by SMP's independent registered accounting firm. Included among these filings was SMP's Form 10-Q for September 30, 2013 stating that as of that date, "an aggregate of 5,400,000 shares of our common stock are available to be granted under the Plan."

20. On June 1, 2011, Mr. Flechner executed a Separation Agreement with SMP whereby SMP acknowledged Mr. Flechner's stock options, 800,000 from his April 1, 2010 Stock Option Agreement and 750,000 from the January 21, 2011 Stock Option Agreement and his right to exercise his options, and extended the period in which he could exercise his options for a period of three years following his termination of employment. Relevantly, SMP promised it "will exert commercially reasonable efforts to facilitate prompt issuance of option shares upon exercise by Employee."

21. Based on Mr. Flechner's departure, SMP filed its Form 10-K for the year-end December 31, 2011 confirming Mr. Flechner's 1,550,000 options and that he had until June 1, 2014 to exercise the entirety of his options.

22. On February 26, 2014, Mr. Flechner properly sought to exercise 310,000 of his stock options through a cashless exercise.

23. When he sent notice to exercise these options, SMP's obligations under the Stock Option Agreements were triggered and SMP was obligated to honor Mr. Flechner's exercise and issue him shares of SMP stock.

24. In response to his notice, Mr. Flechner received a letter from SMP's counsel, notifying him that there were an insufficient number of shares to satisfy his demand because the second grant of shares by the Board of Directors was invalid.

25. SMP recognized Mr. Flechner's right to exercise his options and the validity of his notice.

26. Subsequently, all 1,550,000 options were properly exercised before May 19, 2014, the final exercise date provided for in the Separation Agreement.

27. SMP refused to honor the grant of options to Mr. Flechner or issue the shares of common stock due to him upon exercise in accordance with the terms of the Stock Option Agreements.

28. Contrary to SMP's representation, current public documents filed by SMP with the SEC reflect that there is an adequate number of shares available to satisfy his request.

1675948.3

29. SMP's refusal to allow Mr. Flechner to exercise the entirety of his options results in a breach of its obligations to Mr. Flechner pursuant to the terms of the Stock Option Agreements, the Separation Agreement, and its promises to Mr. Flechner therein.

## COUNT I
### Breach of Stock Option Agreements

30. Mr. Flechner hereby incorporates the allegations of paragraphs 1 through 29 as if set forth here in full.

31. The Stock Option Agreements constitute valid and binding agreements entered into between SMP and Mr. Flechner.

32. In connection with his acceptance of offer of employment from SMP, and at later times after beginning his employment at SMP, Mr. Flechner entered into Stock Option Agreements with SMP, whereby SMP granted Mr. Flechner options to purchase shares of SMP common stock.

33. These options were to vest periodically, at which time Mr. Flechner had the right to exercise those options and purchase SMP stock with cash or through a cashless exercise.

34. The Stock Option Agreements create binding contracts between SMP and Mr. Flechner, under which each party has legal rights and obligations and reflect part of the consideration earned by Mr. Flechner for the rendition of services.

35. SMP breached the terms of the Stock Option Agreements by asserting that Mr. Flechner may not exercise his stock options and by failing and refusing to permit immediate exercise of his stock options.

36. All conditions, covenants and promises precedent to SMP's performance have occurred or have been satisfied, excused or waived.

7

1675948.3

37. As a result of SMP's breaches of its contractual obligations, Mr. Flechner has been damaged in an amount to be determined at trial.

## COUNT II
## Breach of Separation Agreement

38. Mr. Flechner incorporates paragraphs 1 through 37 as though set forth in full.

39. Mr. Flechner and SMP entered into a Separation Agreement dated January 22, 2011.

40. Section 1(c) of the Separation Agreement states: "employee may exercise options to purchase Common Stock pursuant to the terms of each of the Option Agreements for a period of three (3) years commencing on the Termination Date. *Company will exert commercially reasonable efforts to facilitate prompt issuance of option shares upon exercise by Employee.*" (emphasis added).

41. SMP has not exercised any effort to facilitate the issuance of shares to Mr. Flechner when he exercised his option.

42. As a result, upon information and belief, Mr. Flechner has been damaged in an amount to be determined at trial.

## COUNT III
## Promissory Estoppel

43. Mr. Flechner incorporates paragraphs 1 through 42 as though set forth in full.

44. SMP promised Mr. Flechner that he would receive stock options, subject to the terms of the Stock Option Plan and Stock Option Agreements, and ratified that promise in the Separation Agreement.

1675948.3

45.     SMP should reasonably have expected that these promises would induce action by Mr. Flechner, namely in deciding whether to accept and continue his employment with SMP.

46.     Mr. Flechner reasonably relied on the promises made to him by SMP and acted upon these promises to his detriment.

47.     SMP's promises must be enforced to prevent an injustice.

### COUNT IV
### Unjust Enrichment

48.     Mr. Flechner incorporates paragraphs 1 through 47 as though set forth in full.

49.     Based in part on SMP's promises and representations that Mr. Flechner would receive certain stock options, Mr. Flechner was induced to continue to be employed by SMP, foregoing other viable and valuable employment opportunities.

50.     Also based in part on these same promises and representations, Mr. Flechner provided valuable employment services to SMP.

51.     SMP broke its promises regarding Mr. Flechner's stock options and denied Mr. Flechner the valuable shares of common stock due to him upon his proper exercise of his stock options.

52.     SMP has been unjustly enriched by Mr. Flechner's acceptance of and continued employment with SMP, and also by SMP's acceptance of the valuable employment services rendered by Mr. Flechner to SMP.

53.     Under the circumstances, it would be unjust and inequitable for SMP to be permitted to deny Mr. Flechner the value of the stock options.

1675948.3

## COUNT V
### Declaratory Judgment

54. Mr. Flechner hereby incorporates the allegations of paragraphs 1 through 53 as if set forth here in full.

55. SMP acknowledges Mr. Flechner's right to exercise his options, but contends there are insufficient shares to satisfy Mr. Flechner's exercise of his options.

56. However, current public documents reflect that there is an adequate number of shares available to satisfy his request.

57. Moreover, even if there are not sufficient shares, under the Stock Option Agreements, the Plan, and the Separation Agreement, it is SMP's obligation to make sure it could satisfy Mr. Flechner's exercise of his options when he sent proper notice to the Company.

58. Mr. Flechner's rights under these Agreements are affected by SMP's continued refusal to honor its obligations and provide Mr. Flechner adequate shares to satisfy his exercise of his options.

59. Mr. Flechner seeks a declaration:

    a. That SMP is obligated to provide Mr. Flechner sufficient registered, shares to satisfy his February 26, 2014 exercise of his options;

    b. That, in the alternative SMP is obligated to pay Mr. Flechner the difference between the relevant fair market value of shares on the date of exercise and the exercise price; and

    c. Mr. Flechner has properly exercised his options in a manner consistent with the mandates of the Plan.

60. There is a real and actual controversy between Mr. Flechner and SMP regarding SMP's obligation to provide Mr. Flechner the shares due to him upon his exercise of stock options granted to him by SMP, and whether SMP has an obligation to ensure there are sufficient shares to satisfy Mr. Flechner's current and future demands.

## RELIEF REQUESTED

Wherefore, Mr. Flechner requests that this Court enter judgment in its favor and against Defendant as follows:

A. For compensatory damages in an amount to be determined at trial;

B. A declaratory judgment that SMP is required to honor its Agreements with Mr. Flechner, and must provide Mr. Flechner adequate shares or the appropriate cash value in exchange for his exercise of his options.

C. For the equitable relief provided for under Mr. Flechner's Fifth Claim for Relief;

D. For attorneys' fees and costs of suit;

E. For pre-judgment and post-judgment interest; and

F. For such other and further relief as this Court deems just and proper.

1675948.3

Dated: April 29, 2014.

Plaintiff's Address:

1337 S. Fillmore Street
Denver, CO 80210

Respectfully submitted,

BRYAN CAVE LLP

*/s/ Bobbee J. Musgrave*
Bobbee J. Musgrave
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone: 303-861-7000
Email: bobbee.musgrave@bryancave.com

ATTORNEYS FOR PLAINTIFF

1675948.3